| | | |
|---|---|---|
| JOSEPH M. SALVANI and<br>JFS Investments Inc., | ) ) ) | |
| Plaintiffs, | ) | **VERIFIED COMPLAINT** |
| -vs- | ) ) | Case No. 13 CV |
| | ) | Jury Trial Demanded |
| INVESTORSHUB. Com, Inc., and<br>JOHN DOE, known herein as "brklynrusso", | ) ) | |
| Defendants. | ) ) ) | |

## INTRODUCTION

1.     **NOW COMES** Plaintiff, Joseph M. Salvani, an investment analyst and sole shareholder of JFS Investments Inc., a financial consulting company with clients in the State of New York and files this action for defamation and injunctive relief by their attorneys against Defendants Investors Hub and John Doe, known herein as "brklynrusso".

2.     Plaintiffs' allegations are based upon Plaintiff Joseph M. Salvani's personal knowledge, when pertaining to him and JFS Investments Inc., and at all other times, upon information and belief, based on the investigation and research of relevant documents obtained as well as publically available materials related to all other facts alleged in this Complaint.

1

## NATURE OF THE ACTION

3.  The acts hereafter alleged involve claims against the Webhost and content provider Defendant Investors Hub's for their express invitation to allow the Defendant brklynrusso to maliciously post per-se defamatory messages directed at Plaintiff Joseph M. Salvani in his business and reputation in the financial industry and capital markets.

4.  By its banner specific content invitation Investors Hub through their Website iHub.com established a specific per-se defamatory content forum for its members to level personal attacks under the cloak of anonymity which has exposed Plaintiff to hatred, contempt, ridicule and obloquy.

5.  The Defendants' willful, malicious and otherwise negligent acts in the invitation and development of the Posting has caused injury to plaintiffs' business and in his professional reputation wherein plaintiff Joseph M. Salvani by his status and the claims hereinafter made has standing to proceed with this action for damages in his own right and on behalf of JFS Investments Inc.

## FEDERAL QUESTION JURISDICTION

6.  This Court has federal question jurisdiction in this case under 28 U.S.C. § 1331, as Plaintiffs have asserted claims arising under the laws of the United States; specifically, causes of action involving federal questions related to 47 U.S.C. 230(c)(1).

## VENUE

7.     Venue is appropriate in the US District Court for the Southern District of New York pursuant to 28 U.S.C. §1391, because a substantial part of the events giving rise to the dispute occurred in this district, a substantial part of the claims that are the subject of this action are situated in this district, and the Court has personal jurisdiction over each of the parties as alleged throughout this Complaint for activities which have caused injury to the Plaintiff in New York State and elsewhere.

## INJUNCTIVE RELIEF

8.     Defendants' conduct also constitutes entitlement to equitable injunctive relief directing the removal of the Message-Posting and enjoining the Defendants from engaging in further false and defamatory statements of Plaintiff Joseph M. Salvani.

## THE PARTIES

### Plaintiffs:

9.     Plaintiff, Joseph M. Salvani is an individual and is now, and at all times mentioned in this complaint a resident of the State of Florida.

10.     Plaintiff, JFS Investments Inc., ("JFS") is now, and at all times mentioned in this complaint was, a corporation organized and existing under the laws of the State of Florida.

**Defendants:**

11.     Defendant Investors Hub, ("iHub") is now, and at all times mentioned in this complaint was, a corporation organized and existing under the laws of the State of Missouri, with its principal place of business at 1802 N 291 Hwy, #10, Harrisonville Missouri 64701, is the owner and operator of a Website known as "iHub.com".

13.     Plaintiffs are informed and believe, and thereupon allege that the Defendant JOHN DOE (hereafter "brklynrusso"), is an individual who at all times mentioned in this complaint was/is a resident of the State of New York.

14.     The true name of Defendant brklynrusso is unknown to plaintiffs at this time.     Plaintiffs sues this defendant by this fictitious name and will upon determining their true identity seek leave to amend this complaint under their true name.

15.     Plaintiffs are informed and believe, and based on that information and belief allege, that the Defendant iHub and the Defendant brklynrusso are legally responsible for the events and happenings referred to in this complaint, and have unlawfully caused the injuries and damages to plaintiffs alleged hereafter.

4

16.     Plaintiffs are informed and believe, and based on that information and belief allege, that at all times mentioned in this complaint, Defendants were the agents and employees and/or volunteers of their codefendants and in doing the things alleged in this complaint were acting within the course and scope of such agency and are jointly and severally liable for the damages caused to Plaintiffs.

## Factual Claims

17.     Plaintiff Salvani has worked as an investment advisor through his company JFS and related companies, for in excess of 25 years, wherein at all times prior to on or before September 5, 2013, he was engaged in a formal written consulting agreement with CodeSmart Holdings, Inc. a company located at 275 7th Ave., New York, New York where the purpose of this agreement was/is to guide CodeSmart, and to advise Codesmart in its dealings with institutions, and retail investors. The value of this capital raise agreement was in excess of $3 million.

18.     Plaintiff has during his career enjoyed a good reputation, both generally and in the financial community at large.

19.     Defendant iHub, has been operating its Internet Website acting as service and content provider since at least 2003.

20.     Revenues are generated by iHub's solicitation of paid for memberships which presently consists of approximately 250,000 member, most of whom pay for the privilege of making on line post messages on the Website related to financial

topics seeking public review and comment under the claim that the Website is "built to provide a forum for serious investors to gather and share market insights in a dynamic environment using an advanced discussion platform."

21. Beyond Membership revenues, revenue is generated by paid for advertisers on the Website, who by reason of iHub's content specific publications and membership population of "serious investors", the Website has attracted easily recognized financial institutions involved in investment services including well respected financial institutions such as Chase Bank, eTrade, Fidelity, Charles Schwab, and TD Ameritrade.

22. iHub limits its message boards' comments to subscription "Members" who must register and accept iHub's "Terms of Service".

23. Defendant iHub's" Terms of Service require that a Member **must** "agree that you will not upload, share, post, or otherwise distribute or facilitate distribution of any content … that: [i]s unlawful, threatening, abusive, harassing, defamatory, libelous, vulgar, hateful, deceptive, fraudulent, invasive of another's privacy, tortious…" , and so on.

24. The Terms of Service do not obligate iHub "to remove any Content that, in[its] judgment, does not comply with these Terms in any way or with any other rules of user conduct for [their] Site, or is otherwise harmful, objectionable,

or inaccurate, or clearly detracts from the value of the community, as determined in [their] sole judgment."

25. iHub claims that they "are not responsible for any failure or delay in removing such Content", and again, only if they choose to do so.

26. At all times material hereto, iHub requires that in order to respond to a Member's Posting a non-member individual **MUST** become at least a non-paying member and register agreeing to the terms of its Membership Agreement.

27. iHub provides and has developed its own banners encouraging the comments-authorship, ratifying and otherwise expressly adopting per-se defamatory Posts by its' members allowing postings to be made using message boards created by them and containing content specific banner headings such as "Most Shady OTC/PK CEO's (CROOK)", "Fighting the Crooked CEO"s and /or the MM's that HELP THEM", "Crooks, Frauds, Liars, and Banksters", and "Crooked's Den of Self Actualization".

28. On or about September 5, 2013 at 10:30:33AM, Defendant JOHN DOE, a subscribing Member using the moniker "brklynrusso" whose true identity is unknown to the Plaintiff posted a message (hereinafter "the Posting") to the **message board** titled "CodeSmart Holdings, Inc. (ITEN)" stating:

> **salvani was a former broker barred from the financial industry.** He now gets "consulting" jobs with OTC bulliten board co's that have no other means to raise money so he goes

7

out w/ his cronies( brokers he knows)that promote the stock. How he gets paid? The brokers are given restricted stock which they subsequently sell **he gets paid off with cash in a bag.** The stock usually collapses w/ little value once they have exited. Just google Joe Salvani: **[Emphasis added.]** http://www.forbes.com/forbes/1998/0504/6109174s1.html he works with this group out on LI and a broker Daniel welsh or walsh from garden state securities who also get stock in all of salvanis deals. they get stock as an advisor for pretty much doing nothing....its a total joke and im shocked the sec hasn't knocked on their door yet.

as for ITEM, 35k rev losing 2mil ayr w/ a 50mil mkt cap....you tell me if this is a real px at 4**? pump n dump at its best [Emphasis added.]**

29.    The publication-Posting referred to plaintiff Salvani by name throughout, was made of and concerning plaintiff, and was so understood by those who read the message to reflect and convey the appearance and manifestation that plaintiff Salvani was a criminal impugning his reputation and character in his occupation as a financial advisor.

30.    The entire statement that "salvani was a former broker barred from the financial industry. . . . ", or otherwise engaged in a "pump and dump" was false and defamatory, libelous on its face as it pertains to him in his occupation.

31.    The online message-Posting per se exposes plaintiff to hatred, contempt, ridicule and obloquy because it charges plaintiff in his profession from having been a "broker" prosecuted and "barred" from the financial industry, where

it is commonly known by most "serious investors" that the only lawful powers who can ban or otherwise bar an individual from the financial industry would come from a finding of fact by an lawful tribunal who could issue a order enjoining or prohibiting Plaintiff Salvani from engaging in financial transactions, including but not limited to the Securities and Exchange Commission ("SEC"), FINRA or a court of competent jurisdiction.

32. There are no such orders, decrees or judgments, nor have any ever been issued against Plaintiff Salvani or his Company JFS.

33. The posting goes on to falsely allege a claim of stock manipulation involving CodeSmart a public company listed on the OTCBB and bearing ticker symbol (ITEN) in violation of the 1933 and 1934 Securities Acts with Plaintiff and "brokers he knows" accusing Plaintiff of being engaged in a pump and dump scheme with these "brokers".

34. Plaintiff is not now, nor has he ever claimed to be a broker, and has not engaged in any of the illegal SEC activity alleged in the Posting.

35. The Message-Posting has appeared and continues to appear on the Website iHub.com since September 5, 2013, and continues to be seen and read by the public including Denise Aversano, Lucy Squicciarinin, Konsteantin Malyshkin, and others.

36. That on or about September 5, 2013, Plaintiff Salvani discovered the Posting and on that day made a formal written demand of Defendant iHub

informing iHub of the unlawfulness and per-se defamatory nature and content of the Posting demanding the Message-Posting be removed from the iHub Website.

37. On or about September 9, 2013, the webmaster for iHub, David Lawrence responded to Plaintiff Salvani's Demand refusing or otherwise failing to remove the Message-Posting despite its per-se defamatory content requiring Salvani to obtain a Court order and further citing iHub's right "not to make value judgments on the vercity" of its' members' Message-Postings.

## iHub's Liabilty Under 47 USC 230(c)

38. That at all times material hereto, Defendant IHub is a "content provider" providing-publishing its own comments-authorship and in ratifying and otherwise expressly adopting per-se defamatory Post by creating message boards with banner headings such as "Most Shady OTC/PK CEO's (CROOK)", "Fighting the Crooked CEO"s and /or the MM's that HELP THEM", "Crooks, Frauds, Liars, and

Banksters", and "Crooked's Den of Self Actualization".

39. That at all times material hereto, Defendant iHub is a "content provider" engaging in and materially contributing to the unlawfulness of the statements and has expressly participated in the development of these per-se defamatory statements by engaging in enhancement of the Posting by providing the

content specific banners which intentionally invites comment and provides assistance in specific and targeted matters related to the financial industry in support of its stated publication ". . . to provide a forum for serious investors to gather and share market insights in a dynamic environment using an advanced discussion platform."

40.    The headings are intended to expressly expose the targeted individuals to hatred, contempt, ridicule and obloquy in most instances in their profession.

41.    By reason of the content specific published banner headings the invitation to post intended per se defamatory subject matter on the Website Defendant iHub's message boards have been filled with invited third-party comments expressly encouraging facially per-se defamatory Postings defaming individuals with comments as described above and in particular those statements made of the Plaintiff Salvani.

42.    At all times material hereto, iHub uses moderators to screen Membership Posting to remove what in its exclusive opinion and at its discretion is offensive content.

43.    Defendant iHub claims to screen postings by enlisting moderators to "promote the civil exchange of on-topic dialog that complies with the iHub's Terms of Service," as stated in their iHub's User and Moderator Handbook.

44.     The Handbook specifically states, "In short, the role of the Moderator is to help foster an environment that promotes and encourages posting of ALL opinions and information about companies, regardless of the bullish or bearish sentiment of the posts, and to be <u>the site's first line of defense in ensuring we remain free of spam, vulgarity, and personal attacks</u>."

45.     "[iHub's] Moderators have the ability on the boards they are moderating to delete posts made by other iHub members.

46.     At present, iHub has more than 17,000 active boards, each of which could have one or more moderators.

47.     Currently, 6,802 boards have at least one moderator.   At present, 4,317 iHub members volunteer as moderators on one or more boards'.

48.     Plaintiffs are informed and believe that brklynrusso was and/or is a moderator for iHub and an investor with CodeSmart who can and did post the per se defamatory statement concerning Plaintiff Salvani.

49.     "Since iHub began keeping track in 2007, there have been nearly 100,000 additions of, or removals of, moderators on iHub boards."

50.     That by reason of iHub's content specific banners inviting comment directed at the "Most Shady OTC/PK CEO's (CROOK)", "Fighting the Crooked CEO"s and   /or the MM's that HELP THEM", "Crooks, Frauds, Liars, and Banksters", and "Crooked's Den of Self Actualization",  juxtaposed its policy of

12

not removing posts based on "value judgments as to the veracity of user-posted content"; together with its refusal to remove the per-se Posting after receiving notice that the Posting is untrue iHub has created, developed and otherwise encouraged an environment that its Website is a "lawless no-man's land" by way of its message content specific banner on its Website.

51.     The Membership population of iHub therefore consists entirely of members who have been invited, understand and agree that no matter what content they post, the Defendant iHub is under no obligation to remove the post and they will be immune from liability.

52.     By not removing these posts and maintaining banner headings of a specific content expressing a criminal element iHub has encouraged engaged in development of comment-publication involving allegations of a per se defamatory character involving the core of its content which has been expressly "built to provide a forum for serious investors to gather and share market insights in a dynamic environment using an advanced discussion platform. . . "; where the Defendant iHub has made it clear to all members and users of iHub and the public that such comments are not only invited but adopted and ratified.

53.     Given the inviting banner headings described above and the history of facially defamatory comments posted over the course of a decade it becomes clear

the iHub has developed and otherwise encouraged an environment of a "lawless no-man's land on the internet" for its own financial gain.

54.     The unlawfulness of the Posting has increase user activity which has the effect of drawing sponsors who are endorsing the iHub Website with paid advertisements such as Chase Bank, eTrade, Fidelity, Charles Schwab, and TD Ameritrade, which as intended increases awareness and membership generating direct income for these publications in the form of advertising income and from its' membership fees.

55.     Defendant iHub's mandate of forcing the Plaintiff to respond to the Posting with a rehabilitating comment of his own without accepting the oppressive clause in the Terms of Service stating Defendant iHub will have no obligation to remove the source of Plaintiff's defamation severely contradicts Defendant iHub's assertion that to post on iHub "merely requires that such person fill out the on-line registration form and create a login name, alias (or screen name), and password" and is further proof of its control of the content.

56.     At all times material hereto, the appearance of the Posting involving Plaintiff Salvani in the manner presented and with the intent to present "market insights" has had a direct effect in the trading of CodeSmart stock and Salvani's JFS ability to participate and perform under the Agreement with CodeSmart Holding Inc., and others.

## COUNT I.
## Defamation
## All Defendants

57.    Plaintiffs incorporate by reference each and every allegation made in the above numbered paragraphs and further states:

58.    That at all times material hereto, Defendant IHub is a "content provider"  who is libel for the per-se comments of brklynrusso adding its own comments-authorship and in ratifying and otherwise expressly adopting said Post by creating message boards with banner headings such as "Most Shady OTC/PK CEO's (CROOK)", "Fighting the Crooked CEO"s and  /or the MM's that HELP THEM", "Crooks, Frauds, Liars, and Banksters", and "Crooked's Den of Self Actualization".

59.    Defendants have intentionally and maliciously used language tending to harm the reputation of Plaintiff Salvani so as to lower Plaintiff Salvani in the estimation of the community or to deter CodeSmart and others  from associating or dealing with Plaintiff Salvani and JFS.

60.    The statements about Salvani were falsely, maliciously, and intentionally published by the Defendants and were known by them to be false when at the time they were made.

61. The statements were published with actual malice with the intent to injure Plaintiff Salvani in his business and professional reputation.

62. Plaintiff Salvani was specifically identified in the defamatory matter promulgated by the Defendants.

63. By reason of its intentional encouragement and conduct in this matter iHub is not neutral in simply providing an interactive Website and is not entitled to the immunity protections of 47 U.S.C. §230 (c)(1) or any other provision of the law.

Code with respect to the intended offensiveness of the content Posted and concerning Plaintiff Salvani in that they developed the banner heading and encouraged the environment that invited the per-se defamatory illegal and actionable Posting about him by and through brklynrusso.

64. By reason of the foregoing, the Defendant iHub in its use of the banner headings created by them has ratified the comments of brklynrusso by aiding in the development of his Posting and is responsible for the development of the specific per-se defamatory content as a content provider using its own banner headings for effective publishing.

65. By reason of the foregoing, the Defendant iHub is responsible for the per-se defamatory Posting made by its member brklynrusso.

66. The defamatory language was published in that Defendants intentionally or negligently communicated such defamatory language to third parties not the Plaintiff, specifically, Denise Aversano, Lucy Squicciarinin, Konsteantin Malyshkin, and others.

67. As a direct and proximate result of Defendants' defamation of Plaintiff Salvani, Plaintiff has suffered an injury to his reputation and loss of employment opportunities, and since the defamatory statements of the Defendants were intentional, with malice or with reckless disregard as to whether they were false or not, the Plaintiff is entitled to punitive damages in addition to the damages suffered.

68. As a proximate result of the above-described publication, plaintiff has suffered loss of his occupation of no less than $200,000.00; loss in his reputation, shame, mortification, and injury to his feelings, all to his damage in a total amount to be established by proof at trial but no less that the damages sustained by Plaintiff under the terms and provisions of his contract with CodeSmart.

69. The above-described publication was not privileged because it was published by defendants with the specific intent of brklynrusso in his malice, hatred and ill will toward plaintiff and the desire to injure in his profession

wherein the defendants had jointly engaged in the publication and development of said content in injuring Plaintiff.

70.     Because of defendants' malice in publishing, plaintiff actual damages, in the amount of $200,000.00, and seeks punitive damages in an amount to be established by proof at trial.

## COUNT II.
## Libel Per Se All Defendants

73 Plaintiffs incorporate by reference each and every allegation made in the above numbered paragraphs and further states:

74.     Defendants have intentionally and maliciously used language tending to harm the reputation of Plaintiff so as to lower Plaintiff's standing and reputation in the estimation of the community or to deter third-persons, specifically but not limited to CodeSmart and others from associating or dealing with Plaintiff Salvani of his Company JFS.

75.     Plaintiff Salvani was specifically identified in the defamatory Message-Posting as published by on iHub.

76.     The libelous language stated  of fact that the Plaintiff  Salvani "was a former broker barred from the financial industry"  . . . who "gets paid off with cash in a bag" . . . engaged a pump n dump in relation to CodeSmart.

77. This fact directly accuses Plaintiff Salvani of dishonesty in his profession where he is engaged in criminal wrongdoing.

78. The defamatory language was published in that Defendants intentionally or negligently communicated such defamatory language to third parties not the Plaintiff, specifically, Denise Aversano, Lucy Squicciarinin, konsteantin Malyshkin, and others.

79. As a proximate result of the above-described publication, plaintiff has suffered loss of his occupation of no less than $1,00,000.00; loss in his reputation, shame, mortification, and injury to his feelings, all to his damage in a total amount to be established by proof at trial but no less that the damages sustained by Plaintiff under the terms and provisions of his contract with CodeSmart.

80. The above-described publication was not privileged because it was published by defendants with the specific intent of brklynrusso in his malice, hatred and ill will toward plaintiff and the desire to injure in his profession wherein the defendants had jointly engaged in the publication and development of said content in injuring Plaintiff.

81. Because of defendants' malice in publishing, plaintiff actual damages, in the amount of $1,00,000.00, and seeks punitive damages in an amount to be established by proof at trial.

## COUNT III.
## Intentional Infliction of Emotional Distress
## All Defendants

82.     Plaintiffs incorporate by reference each and every allegation made in the above numbered paragraphs and further states:

83.     That the defendants intended and engaged in extreme and outrageous conduct; intending to cause, or disregard of a substantial probability of causing, severe emotional distress; and there exist a causal connection between the conduct and injury; and severe emotional distress sustained by Plaintiff.

84.     By reason of the foregoing, Defendants are liable in damages to the Plaintiff for the unlawful consequences of their acts in a sum no less than $5,000,000.00.

85.     The aforementioned acts of Defendants were willful, wanton, malicious, and oppressive, were undertaken with the intent to cause emotional distress, and justify the awarding of exemplary and punitive damages in the amount of $10,000,000.

## COUNT IV.
## Removal of Defamatory and Libelous Statement Permanent Injunction
## (Against All Defendants)

86.     Plaintiffs incorporate by reference each and every allegation made in the above numbered paragraphs and further states:

87. That by reason of the foregoing, Plaintiff Slavani is entitled to an order directing the removal of the Message-Postings and a permanent order enjoining **Defendants,** and each of them, and their agents, servants, and employees, and all persons acting under, in concert with, from publishing or republishing the Message-Posting.

**WHEREFORE,** with respect to the above claims and causes of action, Plaintiff demands judgment against defendants, and each of them, for:

1. A judgment to Plaintiff Salvani-JFS on their claims and cause of action for defamation including awarding compensatory damages in a sum no less than $2,000,000.00, together with punitive, damages in the amount as may be proved at trial or such other sum as the law may provide;

2. Issue judgment against the Defendants to compensate Plaintiff Salvani for the intended extreme and outrageous conduct causing severe emotional distress to the Plaintiff by providing appropriate damages for the intentional infliction of emotional harm made by the posting on the iHub.com Website in an amount to be shown at trial and other affirmative relief in a sum no less than $2,000,000.00; together with punitive, damages in the amount as may be proved at trial or such other sum as the law may provide;

3. Interest as allowed by law;

4.   Issue an order directing the removal of the Posting and permanently enjoining Defendants from any further derogatory and false publications involving Plaintiff;

5.   Grant Plaintiffs' their attorney's fees, costs and other disbursements; and;

6.   Grant such addition relief as the Court deems just and proper.


Dated: September 25, 2013
       White Plains, New York

DOUGLAS R. DOLLINGER, ESQ., P.C.
       & Associates
Attorneys for Plaintiff
50 Main Street-Suite 1000
White Plains, New York 10606
Tele.  845.915.6800
Fax.   845.915.6801

## INDIVIDUAL VERIFICATION

I, Joseph M. Salvani, am a Plaintiff and sole shareholder of JFS Investments, Inc., also a Plaintiff in the above-entitled action. I have read the foregoing Complaint and know the contents thereof.

The same is true of my own knowledge, except as to those matters which are therein alleged on information and belief, and as to those matters, I believe it to be true.

I declare under penalty of perjury that the foregoing is true and correct and that this declaration was executed at Staten Island, New York.

Dated: September 30, 2013
       Staten Island, New York

_____
Joseph M. Salvani, Plaintiff